IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LEASCO EQUIPMENT SERVICES, INC,** and **K. MARK HALL,** | : : : | |
| Plaintiffs, | : : | Case No. 2:11-CV-965 |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| **UNITED RENTALS (NORTH AMERICA), INC.,** | : : : | Magistrate Judge King |
| Defendant. | : : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 24). For the reasons stated below, Defendant's Motion is **GRANTED**.

**II. BACKGROUND**

*A. Factual Background*

Plaintiff, Leasco Equipment Services, Incorporated, ("Leasco") is an Ohio corporation owned by Plaintiff K. Mark Hall (collectively "Plaintiffs"). Leasco is an equipment rental company dealing primarily with general construction and industrial equipment. Defendant United Rentals ("United") is also an equipment rental company. On July 21, 2009, Plaintiffs entered into an Asset Purchase Agreement ("APA")[1] with United, through which Leasco sold its

---

[1] Pursuant to § 8.1 of the APA, the parties' contract is governed by New York law: "The Agreement and the Related Agreements shall be governed by, construed, interpreted, and applied in accordance with the laws of the State of New York, without giving effect to any conflict of laws rules that would refer the matter to the laws of another

1

assets to United in exchange for several payments to Leasco totaling $24 million, with potential adjustments. The sale included thousands of pieces of equipment, tools, and parts. After the sale, United leased Leasco's former site in Marietta, Ohio and opened the Leasco branch as a separate branch of United.

Pursuant to § 1.7 of the APA, the final payment to Leasco was to be a "Third Payment" earned during the earnout period of August 1, 2009 to July 31, 2010. (*See Complaint*, Doc. 1 at ¶ 11). That payment was to be calculated based on the earnings gained from the rental or sale of the tools, parts, and equipment that United purchased from Leasco, prior to interest, taxes, depreciation, and amortization ("EBITDA"). Section 1.7(a) of the APA states as follows:

> Third Payment Amount. Buyer and Seller acknowledge and agree that, upon Closing, the Business as operated from the location leased pursuant to the New Lease shall be deemed to be its own, separate branch within Buyer with its own profit & loss statements (the "Leasco Branch"). The Third Payment is a potential payment based on EBITDA (as defined below) from the Leasco Branch, calculated and payable as provided herein. Subject to the conditions set forth in this Section 1.7 and elsewhere in this Agreement (including Section 6.8), the Third Payment will be paid in one lump sum upon completion of the EBITDA Report, all in the manner contemplated by and further provided in this Section 1.7. The Third Payment shall be determined in accordance with the following schedule:

| Third Payment | EBITDA |
| --- | --- |
| $4,000,000 | $7,700,000 or more |
| $3,920,000 | $7,600,000 - $7,699,999 |
| $3,724,000 | $7,500,000 - $7,599,999 |
| $3,165,400 | $7,400,000 - $7,499,999 |
| $2,374,050 | $7,300,000 - $7,399,999 |
| $1,543,133 | $7,200,000 - $7,299,999 |
| $848,723 | $7,100,000-$7,199,999 |
| $297,053 | $7,000,000 - $7,099,999 |
| $44,558 | $6,900,000 - $6,999,999 |
| $2,228 | $6,800,000 - $6,899,999 |

---

jurisdiction. Each party hereby consents to the jurisdiction of any state or federal court in Ohio, and agrees that venue for any proceeding arising from this Agreement shall be proper in such forum."  (*APA*, Doc. 1-1 at 49).

2

| | |
|---|---|
| $0 | $6,799,999 or less |

(*APA*, Doc. 1-1, at 10).  According to the APA, the Leasco Branch EBITDA needed to reach at least $6.8 million in order for Plaintiffs to earn enough for an actual Third Payment. Defining the EBITDA, § 1.7 states:

> For purposes of this Section 1.7, "EBITDA" means, subject to adjustment as described in Section 1.7(b), the earnings from operations by Buyer of the Leasco Branch, before interest, taxes, depreciation and amortization, for the twelve calendar months commencing on the first calendar month immediately following the Closing Date, as determined in accordance with GAAP as applied by Buyer generally with respect to its branches, which shall include allocations for health and welfare benefits and allocations for insurance (provided that the allocation for insurance will not exceed $150,000 for such 12 month period), in each case with respect to the Leasco Branch, provided that Buyer's overhead allocation (allocations from corporate, region/district offices, shared service center and distribution center) shall not be assessed against the Leasco Branch and shall be consistent with Buyer's standard practices for such allocations.

(*Id*.).  As set forth by the APA, on July 31, 2010, United delivered Plaintiffs a written report with the profit and loss statement for the Leasco Branch.  The statement also included United's calculation of the EBITDA, which United alleges was calculated according to the APA.  United's report is the basis of the parties' dispute.

According to United, the actual EBITDA was $4.445 million—$2.355 million short of what is required for United to make the Third Payment to Plaintiffs.  United hired Eric Mulchaey, a CPA and Certified Fraud Examiner, to compile a report on United's EBITDA calculation.  (*See* Doc. 25-3).  Mulchaey concluded that United had neither underreported revenue for its Leasco Branch, nor mistated the EBITDA Report.

*B. Procedural Background*

Plaintiffs filed their Complaint on October 28, 2011, alleging Breach of Contract. (Doc. 1). On November 4, 2013, Defendant filed its Motion for Summary Judgment. (Doc. 25). On August 20, 2014, this Court held oral argument on the Defendant's Motion for Summary Judgment, and counsel for both parties participated. This matter is, therefore, ripe for review.

### III. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish one of the elements of a claim and would affect the application of governing law to the rights of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542 P.2d 867, 872 (1975)).

A movant for summary judgment meets its initial burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Dixon v. Anderson*, 928 F.2d 212, 216 n. 5 (6th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986)). At that point, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Id*. (quoting Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). It is not, however, the role of the trial court to "resolve factual disputes by weighing conflicting evidence because it is the jury's role to assess the probative value of the evidence." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir. 1990) (citing *Stone v. William Beaumont Hosp.,* 782 F.2d 609, 615 n. 5 (6th Cir. 1986); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980)). All evidence and reasonable inferences must be viewed in the light most favorable to the party opposing the

motion. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 759 (6th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### IV. LAW & ANALYSIS

The crux of Defendant's motion is Plaintiffs' failure to obtain a properly appointed expert required to calculate the EBITDA. Rather than responding directly to Defendant's assertion, Plaintiffs argue that Defendant violated the implied covenant of good faith and fair dealing. The Court, thus, shall address each of the parties' arguments in turn.

#### *A. Expert Testimony*

Defendant makes three arguments under the umbrella of burden of proof. First, Defendant asserts that the accounting analysis relating to the EBITDA calculation is expert testimony. Grounding its argument in the requirements of Federal Rules of Evidence 701[2] and 702[3], Defendant insists that the accounting analysis necessary to support Plaintiffs' claims regarding the EBITDA cannot be performed without specialized knowledge. Defendant argues that an average layperson would be unable to make sense of the different calculations that factor into the EBITDA determination, which requires an understanding of earnings before interest, taxes, depreciation, and amortization, pursuant to § 1.7 of the APA. Additionally, Defendant

---

[2] Fed. R. Evid. 701 provides: If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
**(a)** rationally based on the witness's perception;
**(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

[3] Fed. R. Evid. 702 states: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

contends that an evaluation of the EBITDA cannot be done properly barring some specialized knowledge of accounting practices, including familiarity with GAAP.[4] Defendant maintains that the volume and complexity of data that Plaintiffs requested merely bolsters its claim that the EBITDA is a complex calculation.

Next, Defendant claims that the testimony of John Medeiros, a CPA retained by Plaintiffs for this litigation, is lay testimony that cannot be used to support Plaintiffs' contentions regarding the EBITDA calculations. Defendant argues that, because Medeiros was not involved in the instant case until he was retained for the purposes of this litigation, he cannot testify as a fact witness as to the proper EBITDA calculations. Defendant further asserts that any of Medeiros' admissible testimony must be limited, thereby staying within the confines of the Sixth Circuit's decision in *JGR Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519, 526 (6th Cir. 2004). The primary issue in *JGR* was the admissibility of the testimony a witness who was a certified public accountant and attorney, and had testified about JGR's lost profits and loss of business value suffered due to Thomasville's alleged breach of contract. *Id.* The court found that the witness at issue had "never been an owner, officer or director of JGR." *Id*. Moreover, "the information upon which [the witness] relied in making his calculations of lost profits and loss of business value came primarily from [JGR's main principal]," most of which the witness admittedly did not verify independently. *Id.* Thus, the Court determined that the witness "had no basis upon which to offer lay opinion testimony about JGR's lost profits or loss of business value." *Id*. Defendant maintains that Medeiros' role as a contracted witness retained to provide

---

[4] "'GAAP' shall mean those generally accepted accounting principles and practices which are used in the United States and recognized as such by the American Institute of Certified Public Accountants acting through its Accounting Principles Board or by the Financial Accounting Standards Board or through other appropriate boards or committees thereof and which are consistently applied for all periods so as to properly reflect the financial position, results of operations and operating cash flow, except that any accounting principle or practice required to be changed by the Accounting Principles Board or Financial Accounting Standards Board (or other appropriate board or committee) in order to continue as a generally accepted accounting principle or practice may be so changed." (*APA*, at 18).

services based on his knowledge, and the assumption that Medeiros needs to rely solely on information provided by Leasco and United, prevents him from testifying as either a lay person under Rule 701, or an expert witness pursuant to Rule 702.

Third, Defendant contends that Plaintiffs did not, and cannot, present expert testimony by any witness, including Medeiros.  Specifically, Defendant argues that Plaintiffs did not comply with Federal Rule of Civil Procedure 26(a)(2), which states that a party must disclose to the other parties the identity of any expert witness Plaintiffs intends to use at trial, as well as a written report prepared and signed by the expert witness, "if the witness is one retained or specifically employed to provide expert testimony in the case."  As Defendant notes, if a party fails to make the necessary disclosure pursuant to Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was justified or harmless." Fed. R. Civ. P. 37(c)(1).  Defendants emphasize that Plaintiffs failed to designate Medeiros as an expert; thus, he cannot present expert testimony, and his lay testimony must be limited according to Rule 701.  Defendant asserts that Medeiros cannot be proffered as an expert in "lay witness clothing."  *See* Fed. R. Evid. 701 advisory committee notes to the 2000 Amendments ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.").

Plaintiffs offer no response to Defendant's various arguments regarding the admissibility of Mederios' testimony under Rules 701 and 702.  Thus, it does not appear that those matters concern any disputed issues of material fact.  Defendant has set forth various legal precedents and rules to support its contention that Medeiros' testimony is inadmissible in this matter.  The Court, however, will not grant summary judgment on that alone; rather, it must consider the

more fully briefed argument of Defendant's alleged violation of the implied covenant of good faith and fair dealing.

### B. Implied Covenant of Good Faith and Fair Dealing

#### 1. <u>Alleged Violation of Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiffs argue that Defendant's Motion must be denied for two reasons. First, Plaintiffs assert that Defendant violated the implied covenant of good faith and fair dealing. Plaintiffs insist that Defendant's business actions denied Plaintiffs the benefits of the earn-out provision set forth in § 1.7 of the APA. Those supposed actions include: failure to take physical inventories; failure to keep records of bulk equipment rentals or sales; failure to create spreadsheets for one and a half months of the earn-out period; failure to apply fair market value to the equipment, tool, and parts transfers from the former Leasco facility to other United branches; and not giving the former Leasco facility 30 percent of the revenue from the rental or sale of its equipment, tools, and parts assigned to other United branches. (*See Plaintiff's Response*, Doc. 28 at 6). Plaintiffs contend that United's actions made it impossible for Plaintiffs *or* Defendant to determine the earnings derived from the assets during the earn-out period. As such, Plaintiffs maintain that United violated the implied covenant of good faith and fair dealing.

Defendant first claims that Plaintiffs' argument that neither party was able to calculate the EBITDA based on Defendant's actions is negated by Defendant's ability to use the materials it compiled, and shared with Plaintiffs, to calculate the EBITDA. Defendant's expert stated that United's EBITDA figure was not materially misstated and was calculated in compliance with § 1.7 of the APA and GAAP. (*See* Doc. 25-2, ¶ 14). In a similar vein, Defendant claims that Plaintiffs' argument that Defendant failed to perform physical inventories of equipment is

8

invalidated by the exhibits Plaintiffs use to support their argument, which indicate that Plaintiffs were given documents detailing the physical inventory on-site at the Leasco branch.

Next, Defendant contends that, pursuant to the APA, Defendant reserved the right to operate the Leasco branch as it saw fit, and to allocate earnings to the Leasco branch in the same manner in which it would allocate earnings to other United branches. Defendant asserts that equipment sharing among branches is a standard practice within United. Moreover, the revenue derived from the inter-branch sharing is broken down by allotting 70 percent to the branch to which the equipment is assigned, and 30 percent to the renting branch ("70/30 split"). The 70/30 split applied to all inter-branch rentals during the relevant earn-out period. Thus, Defendant claims that crediting the Leasco branch with 100 percent of the revenue from inter-branch rentals would have been a deviation from standard procedure. Because the APA does not require the Leasco branch to be credited with 100 percent of the revenue from inter-branch rentals, Defendant argues it was not obligated to do so. (*See* APA § 1.7, Doc. 1-1 at 10-13). Additionally, Defendant maintains that its adherence to the 70/30 split cannot be used to show a breach of the covenant of good faith.

Defendant further asserts that Plaintiffs mischaracterized Defendant's method of calculating bulk equipment. While Plaintiffs claim that the bulk equipment was not factored into Defendant's calculation of the EBITDA, Defendant contends that the revenue from bulk items is represented by a dollar amount on a rental contract, not listed on an item-by-item basis. Defendant's method of tracking bulk items, however, does not mean that it did not include the revenue from those bulk items in its calculation of the EBITDA. Moreover, United was not obligated under the APA to track individual items factored into bulk equipment dollar amounts

9

in an alternative method. Defendant argues that its practice with bulk items was in keeping with the 70/30 split and the requirements of the APA.

Finally, Defendant contends that, even if Plaintiff could demonstrate that United had failed to create and maintain proper records, Plaintiffs have failed to present evidence to show that United breached its duty of good faith and fair dealing. According to Defendant, Plaintiffs have neglected to identify the EBITDA amount they believe is correct. Defendant argues that Plaintiffs have not proffered facts and evidence that would support that to-be-determined EBITDA amount. Defendant insists that, through discovery, it has turned over all of the necessary data that concerns the EBITDA to Plaintiffs, yet Plaintiffs have failed to argue what they believe to be the correct EBITDA amount or how they calculated that amount. Defendant claims that both of those pieces of information are crucial to Plaintiffs' breach of contract claim. Relying on the Supreme Court's decision in *Celotex*, Defendant maintains that Plaintiff has failed to set forth an essential element of their breach of contract claim, thereby warranting summary judgment in Defendant's favor. *See* 477 U.S. 317, 322 ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Under § 8.1 of the APA, the APA is governed by New York law. (*See APA*, Doc. 1-1 at 49). To establish a claim for breach of contract under New York law, a party must prove: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (quoting *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000)). Every contract

10

under New York law has an implied covenant of good faith and fair dealing.  *Popovich v. Sony Music Entm't, Inc.*, 508 F.3d 348, 365-66 (6th Cir. 2007) (citing *Dalton v. Educ. Testing Serv.,* 663 N.E.2d 289 (1995)).  The "covenant of good faith and fair dealing is limited to performance under a contract."  *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) (emphasis removed) (citing *Bank of New York v. Sasson,* 786 F.Supp. 349, 354 (S.D.N.Y.1992)).  As the *PepsiCo, Inc. v. Cent. Inv. Corp., Inc.* court stated:

> Th[e] [implied covenant of good faith and fair dealing] means that one party to the contract will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement…. The covenant [] is also violated when a party acts in a manner which would deprive the other party of the right to receive the benefits of their agreement…. This covenant does not create new rights nor does it impose any obligation which would be inconsistent with the other terms of the contract.

*PepsiCo, Inc. v. Cent. Inv. Corp., Inc.*, 268 F. Supp. 2d 962, 967 (S.D. Ohio 2001) (citing *Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991); *Don King Productions, Inc. v. Douglas,* 742 F. Supp. 741, 767 (S.D.N.Y.1990)).

      Plaintiffs urge this Court to find that Defendant has violated the implied covenant of good faith and fair dealing, yet offer a dearth of law or evidence on which this Court can hang its hat.  Despite their efforts to use the case law as their primary support, Plaintiffs fail to show how a reasonable jury could find that Defendant breached the APA.  Plaintiffs do not present evidence that Defendant acted in a manner that would have deprived them of the benefit of their agreement.  Despite Plaintiffs' assertion that Defendant conducted its business in a way that violated the APA, Plaintiffs fail to demonstrate that there are disputed issues of material fact that preclude summary judgment.

11

2. <u>Remedy for Breach</u>

Plaintiff next alleges that the proper remedy for Defendant's purported breach is the entire amount of the earn-out period.  Plaintiffs claim that the consequence of United's breach is Plaintiffs inability to calculate the EBITDA under § 1.7 of the APA and according to GAAP, thus resulting in Leasco's loss of the earn-out payment.  According to Plaintiffs, Defendant's alleged breach is analogous to a litigant intentionally destroying or losing evidence, because it has made it impossible for Plaintiffs to prosecute or defend its case.

Defendant responds that Plaintiffs have failed to allege, let alone demonstrate, that United destroyed any evidence.  Rather, Defendant argues that it has produced all of the information necessary for Plaintiffs to check United's calculation of the Leasco branch EBITDA, and perform their own EBITDA calculation.  Thus, Defendant contends that Plaintiffs have neglected to meet their burden.

This Court may sanction a litigant for spoliation of evidence if three conditions are met: (1) the party with control over the evidence had an obligation to preserve that evidence at the time it was destroyed; (2) the accused party destroyed the evidence with a culpable state of mind; and (3) the destroyed evidence would support the opposing party's claim.  *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) (citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010)).  Though Plaintiffs set forth allegations that they could not calculate the EBITDA because of Defendant's alleged improper handling or potential destruction of evidence, they offer no additional material to support that contention.  Insofar as Plaintiffs offer this argument as a basis for denial of summary judgment, or for a full recovery of the possible revenue generated during the earn-out period, there are no disputed issues of material fact, because Plaintiffs have failed to proffer supporting evidence.  Thus, Plaintiffs'

12

argument that Defendant's alleged mishandling of records or neglect to disclose certain evidence, does not rise to the level of spoliation, and cannot, therefore, provide a basis for this Court's denial of summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED**.  Accordingly, Defendant's Motion to Strike (Doc. 34) is **MOOT**.

**IT IS SO ORDERED.**

    **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: September 4, 2014**